UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
JACK'S CONSTRUCTION, INC.,
      Debtor.                                               No. 7-07-11967-SL

KIERAN F. RYAN,
    Chapter 7 Trustee,
        Plaintiff,

v.

FOXWORTH-GALBRAITH LUMBER
COMPANY,
        Defendant.                                   Adv. No. 09-1117-S

**MEMORANDUM OPINION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Foxworth-Galbraith Lumber Company's ("Foxworth") Motion for Summary Judgment ("Motion")(doc 19) with accompanying Memorandum and Exhibits (docs 20 and 21), Plaintiff's Response with attached Exhibit (doc 23) and Foxworth's Reply with attached Exhibit (doc 26). Among Defendant's exhibits are two affidavits of Marla Hoover (docs 20-26 and 26-1) and the affidavit of Billie Hall (doc 20-25). This is a core proceeding to determine, avoid, and recover a preference. 28 U.S.C. § 157(b)(2)(F). For the reasons set forth below, the Court finds that Foxworth's Motion is well taken and should be granted.

**INTRODUCTION**

      One of the purposes of bankruptcy law is to
provide fair remedies to creditors generally, and a
corollary of this principle is to prevent, within
limits, a debtor from giving preferred treatment to
some creditors in derogation of the interests of other,

similarly situated creditors.  A debtor might be motivated to prefer one creditor or some creditors over his creditors generally for a number of reasons, including personal and business connections.  The supervision of the bankruptcy court generally prevents unwarranted preferential treatment.  But the law has long recognized and addressed the concern that a debtor could circumvent this policy by making preferential transfers before filing his bankruptcy petition.

   The power and duty to address preferential transfers in Chapter 7 cases is initially vested in a trustee appointed by the bankruptcy court to supervise the bankruptcy estate.  As discussed <u>infra</u>, the Bankruptcy Code provides that a transfer to any creditor less than 90 days before filing a bankruptcy petition can be set aside if it meets other statutory criteria (including generally that the transfer is made for the benefit of a creditor on account of a pre-existing debt, while the debtor was insolvent, and results in the creditor receiving more than she would if the debtor's assets were liquidated in bankruptcy).

<u>Rupp v. United Security Bank (In re Kunz)</u>, 489 F.3d 1072, 1074-75 (10th Cir. 2007).  The statute that allows this recovery, and creates the relevant defenses asserted by Foxworth provides:

> **§ 547. Preferences.**
> (a) ...
> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>    (1) to or for the benefit of a creditor;
>    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>    (3) made while the debtor was insolvent;
>    (4) made--
>       (A) on or within 90 days before the date of the filing of the petition; or
>       (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>    (5) that enables such creditor to receive more than such creditor would receive if--
>       (A) the case were a case under chapter 7 of this title;

-2-

>               (B) the transfer had not been made; and
>               (C) such creditor received payment of such
>               debt to the extent provided by the provisions
>               of this title.
>       (c) The trustee may not avoid under this section a
>       transfer--
>               (1) ...
>               (2) to the extent that such transfer was in
>               payment of a debt incurred by the debtor in the
>               ordinary course of business or financial affairs
>               of the debtor and the transferee, and such
>               transfer was--
>                       (A) made in the ordinary course of business
>                       or financial affairs of the debtor and the
>                       transferee; or
>                       (B) made according to ordinary business
>                       terms[.]

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056(c). determining the facts for summary judgment purposes, the Court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to the affidavits. Fed.R.Civ.P. 56(e). When a motion for summary judgment is made and supported by affidavits or other evidence, an adverse party may not rest upon mere allegations or denials. Id. Rather, "Rule 56(e) ... requires the nonmoving party to go beyond thepleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Rule 56(e) permits a proper summary judgment motion to be

-3-

Case 09-01117-s    Doc 28    Filed 04/06/11    Entered 04/06/11 11:38:54 Page 3 of 15

opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. The court does not try the case on competing affidavits or depositions; the court's function is only to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In ruling on a motion for summary judgment, the trial court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010) (citing Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005)). On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment." Id. at 1170 (quoting Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)) (internal quotation marks omitted). "[F]ailure of proof of an essential element renders all other facts immaterial." Id. (quoting Koch v. Koch Indus., Inc., 203 F.3d 1202, 1212 (10th Cir.), cert. denied, 531 U.S. 926 (2000)).

As discussed below, the Court finds that Foxworth has established that there is no genuine issue of fact that the payments challenged by the Plaintiff were made in the ordinary course of business or financial affairs of Jack's Construction,

-4-

Inc. and Foxworth. The Court will therefore not address Foxworth's second defense that the payments were also made according to ordinary business terms.

**FACTS**

Foxworth admitted all of the allegations in the Complaint dealing with the parties, jurisdiction, venue, core status, and admitted receipt of $51,992 within 90 days of the petition on account of antecedent debt. Foxworth denied that the payments were preferences, lacked information on the Debtor's insolvency, and denied that it received more than it would in a liquidation, and denied that the Plaintiff could recover. Foxworth also asserted Section 547(c)(2) as an affirmative defense.

Foxworth then filed its Motion seeking summary judgment on its Section 547(c)(2)(A) & (B) defenses[1]. Foxworth claims, and

---

[1] The ordinary course of business exception is an affirmative defense. Jagow v. Grunwald (In re Allied Carrier's Exchange, Inc.), 375 B.R. 610, 615-16 (10th Cir BAP 2007)(citing Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners), 12 F.3d 1549, 1553 (10th Cir. 1993)). The Tenth Circuit has held that the ordinary course of business exception contains a subjective test in subsection [A] and an objective test in subsection [B]. Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.), 220 B.R. 1005, 1020 (10th Cir. BAP 1998)(Decided pre-BAPCPA). The subjective test examines whether the transfers at issue were "ordinary as between the parties" and the objective test examines whether the transfers were "ordinary in the industry." Id. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") substituted "or" for "and" between subsections 547(c)(2)(A) and (B), thereby considerably lightening the creditor's burden in defeating preference claims.

-5-

the Court also finds, that there are three[2] material undisputed facts.

The first proposed fact is that Foxworth sold construction materials to Debtor from its Alamogordo store in the ordinary course of Foxworth's and Debtor's business and financial affairs. Plaintiff stipulated that this was undisputed.

The second proposed fact is that Debtor had an open account with Foxworth for over 17 years. Because of a computer changeover in 2004, Foxworth can only produce details of its open account transactions with Debtor for a period of about four years, from October 2004 until the filing of the bankruptcy petition in August 2007. Plaintiff claims that this is "disputed," but provides no citation to the record to show a contrary fact. Plaintiff also states that Foxworth could only produce business records for four years and that any "evidence" of a business relationship before that time is "uncertain and unreliable."

Federal Rule of Civil Procedure 56(e)(2) provides:

> **Opposing Party's Obligation to Respond.** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--

---

[2] The Motion contains four facts. The fourth fact deals with general industry practice. This is not relevant to the § 547(c)(2)(A) defense, so the Court does not need to address it or Plaintiff's objection to it.

-6-

> set out specific facts showing a genuine issue for
> trial. If the opposing party does not so respond,
> summary judgment should, if appropriate, be entered
> against that party.

Fed.R.Civ.P. 56(e)(2) (2009)(amended December 1, 2010). <u>See also</u> NM LBR 7056-1 (Facts disputed by nonmovant must cite to record to demonstrate dispute. Movant's facts are deemed admitted unless specifically controverted.) The Court finds that Plaintiff relied "merely on allegations or denials" to controvert this fact and therefore did not meets his burden under the rule to set out specific facts showing a genuine issue for trial. If Plaintiff had evidence to the contrary, it needed to point it out or file an affidavit. <u>Montgomery v. Ellis</u>, 364 F.Supp. 517, 527 (N.D. Al. 1973)(If non-movant had any facts to support its theory, it should have set them out in an affidavit; a party cannot withhold evidence until trial, but most show at summary judgment that there is a reasonable dispute of facts.) The second fact is deemed admitted under the local rule.

Furthermore, Plaintiff is incorrect that there is no "evidence." The record contains three affidavits that are competent evidence that clearly demonstrates the business practices of the parties. The affidavits state that the practice has remained the same for seventeen years. Finally, four years of records is a sufficient sample, when combined with the affidavits, to discern prior practice. <u>See</u> <u>Simon v. Gerdau MacSteel, Inc. (In re American Camshaft Specialties, Inc.</u>), ___

-7-

B.R. \_\_\_, 2011 WL 486587 at \* 1, 4 and 5 (Bankr. E.D. Mich. 2011)(Parties had a twenty-year business relationship; court granted summary judgment for creditor on basis of deposition of a twenty-year employee of the creditor that testified that for the entire history the debtor had not paid according to invoices, but paid at about 60 days; and, that employee's affidavit attached exhibits documenting the prior one year of transactions.); <u>Burtch v. Detroit Forming, Inc. (In re Archway Cookies)</u>, 435 B.R. 234, 243 (Bankr. D. Del. 2010):

> In this case, the parties' relationship was established over a two-year period and during their relationship there were 117 transactions between the parties. Based on the length of their business relationship and the numerous transactions between the parties, the Court finds that this relationship was of sufficient length to establish an ordinary course of dealing between the parties.

(Footnote omitted.) (Footnote cites cases that find relationships of 15 months, 2 years, and 3 years sufficient, but also cites cases that find relationships of 1 year, 16 months and 90 days or less insufficient.)

The third proposed fact is that the ordinary course of business and financial affairs for Foxworth and Debtor was as follows: Debtor purchased materials on its open account; Foxworth provided the materials and invoiced Debtor monthly; Debtor paid Foxworth as it was able, based on when Debtor's customers paid it. Plaintiff agrees that Debtor had an account with Foxworth and that Debtor purchased materials on open account. Plaintiff

-8-

disputes that "Debtor paid Foxworth as it was able, based on when Debtor's customers paid it." Plaintiff points to no contrary evidence in the record however, so this fact is also deemed admitted.

Plaintiff further tries to dispute the fact by attacking the affidavits[3]: "The Trustee objects to Foxworth's supporting affidavits purporting to have personal knowledge about the Debtor's state of mind or reasons for making payments, as the affiants have not demonstrated any foundation for being able to do so." Apparently by "state of mind" Plaintiff is referring to the one common statement in all three affidavits about making payments; that is, when Debtor received payments from its customers, it paid Foxworth. The Court does not understand this to be a statement of Debtor's state of mind; rather, it is a statement about ability to pay a debt one owes. It is common

---

[3] Plaintiff did not move to strike any affidavit or specific portion of any affidavit. Generally, unless a nonmovant moves to strike or files a formal objection that details the specific paragraphs sought to be stricken and the reasons why, there is a waiver and the trial court is free to consider all evidence before it. See Associated Press v. Cook, 513 F.2d 1300, 1303 (10th Cir. 1975); Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 579 (2d Cir. 1969). See also Servants of the Paraclete, Inc. v. Great American Ins. Co., 866 F.Supp. 1560, 1564 (D. N.M. 1994)("The United States Court of Appeals for the Tenth Circuit has explicitly held that legally insufficient affidavits under Rule 56(c) are subject to a motion to strike."); and Wright, Miller and Kane, 10B Federal Practice & Procedure § 2738 (3d ed)(text accompanying n.51). The Court can, however, ignore statements in affidavits for which there is obviously no foundation. Perma Research, 410 F.2d at 579.

-9-

knowledge that if one does not have money, one cannot pay bills.

Although Plaintiff did not file a cross motion for summary judgment, he asserted nine additional facts that he considers material and undisputed. The Court finds that these additional facts do not create a genuine issue of material fact as to Foxworth's defense.

The first three facts are two allegations in the complaint admitted by Foxworth: the amount of the debt and the fact that it was antecedent. The third is that Debtor was insolvent at the time of the payments. This third fact cites only to § 547(f), which is a rebuttable presumption that every debtor is insolvent for ninety days before bankruptcy. A presumption is not a fact. In any event, whether debtor was insolvent is irrelevant if the challenged payments were ordinary course business payments.

Plaintiff's fourth fact is that Debtor's credit application had different terms. It did. However, "[i]t is what is normal between the two parties that controls, not necessarily the printed words of an invoice." Tomlins v. BRW Paper Co., Inc. (In re Tulsa Litho Co.), 229 B.R. 806, 809 (10th Cir. BAP 1999)(decided under former law).

> When applying the subjective test of subsection [(A)], courts compare transfers from the pre-preference period with transfers during the preference period and weigh the following four primary factors: "(1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or

-10-

Case 09-01117-s    Doc 28    Filed 04/06/11    Entered 04/06/11 11:38:54 Page 10 of 15

payment activity; and (4) the circumstances under which
the payment was made." Sunset Sales, 220 B.R. at
1020-21. When considering the first two factors, if
there are no prior transactions, courts should
generally look to see whether the debtor adhered to the
contract payment terms. Id. at 1021.

Id. at 809. See also American Camshaft, ___ B.R. at ___, 2011 WL 486587 at *6:

> In this case, the evidence is uncontroverted that
> the Debtor was historically past invoice terms in
> making its payments to Gerdau, but that it had
> ordinarily paid around 60 days. During the one year
> before the 90 day preference period, the average time
> was 59 days, and during the 90 day preference period,
> it was 63 days. That is not a material change,
> especially when the lag time between the invoice date
> and payment date lengthened, rather than shortened.
> Similarly, the range of dates of payments in the year
> before the preference period was 44 to 74 days. During
> the 90 day preference period, it was 56 to 74 days.
> Again, not a material change. To the extent that the
> timing of payments is important in considering the
> subjective component under § 523(a)(2)(A) [sic], the
> timing in this case tends to suggest that the payments
> to Gerdau during the 90 day preference period were
> consistent with the past practices of the Debtor and
> Gerdau.

Foxworth had thousands of transactions with Debtor. The Court finds that evidence of practice overrides the printed terms on the credit agreement.

Plaintiff's fifth fact is that each preferential payment was substantially late. Foxworth's response is that all of Debtor's payments for seventeen years were late. This is demonstrated in the tables on pages 6 and 7 of the Motion, which summarize Ms. Hoover's detailed analysis of all invoices from October, 2004 to the petition date. The tables also demonstrate that during the

-11-

preference period, the lateness had actually decreased over prior periods.  See also Foxworth's Reply, doc 26 at 11 (Percentage of payments later than 115 days dropped constantly from 2004 to the preference period.)  See Menotte v. Oxyde Chemicals, Inc. (In re JSL Chemical Corp.), 424 B.R. 573, 579 (Bankr. S.D. Fla. 2010):

> "[U]ntimely payments are more likely to be considered outside the ordinary course of business and avoidable as preferences." [Marathon Oil Co. v. Flatau (In re] Craig Oil [Co.)], 785 F.2d [1563] at 1567–68 [(11th Cir. 1986)].  Nevertheless, a "creditor may overcome the presumption that late payments are non-ordinary by showing that it was in the ordinary course of the parties' business to pay late." Braniff, Inc. v. Sundstrand Data Control, Inc. (In re Braniff), 154 B.R. 773, 780–81 (Bankr. M.D. Fla. 1993); see also [Kapila v. Media Buying, Inc. (In re] Ameri P.O.S. [Inc.], 355 B.R. [876] at 885 [(Bankr. S.D. Fla. 2006)](citing [Logan v. Basic Distribution Corp. (In re ] Fred Hawes Org.[,Inc.], 957 F.2d [(239)]at 244)("If paying late was ordinary for the parties then such payments are not preferences."); [Official Comm. of Unsecured Creditors of the Estate of] CCG 1355, Inc. [v. CRST, Inc. (In re CCG 1335, Inc.)], 276 B.R. [377] at 383 ("late payments can be ordinary course if analysis finds them to be consistent, both before the preference period and during that period").

Plaintiff's sixth and seventh fact focus on a perception that more checks were in round figures (e.g., $64,000) as Debtor progressed into bankruptcy.  Although the Court doubts that this has any significance, Foxworth corrected the perception by filing the second Hoover affidavit (doc 26-1) that corrected the amounts of some checks that had been misreported during or after the computer accounting system changeover.  In fact, about one-third of all checks between 2004 and 2007 were in round numbers.

-12-

Plaintiff's eighth fact is that Debtor stopped payment on a check. The Court does not understand how a unilateral act of the Debtor to stop payment on one check before filing bankruptcy upsets the seventeen years of prior experience between the parties. Furthermore, by stopping payment on the check, it is not included in Plaintiff's calculations and is not subject to recovery.

Plaintiff's ninth fact is that Foxworth filed two mechanics liens, one in 2007 and one in 2008, to extract preferential payments. Foxworth argues that the liens were not filed against Debtor, but rather against the properties. This is supported by Exhibit D, doc 21-3. The Court also notes that the one in 2008 was filed after Debtor's bankruptcy, so hardly could have been an attempt to extract a payment. As to the first lien, there is no evidence on record of whether this was customary, whether this in fact was an attempt to coerce Debtor or did coerce Debtor. It was also neither a certified copy or attached to an affidavit. The Court finds that this possible discrepancy is not material, especially in light of Ms. Hoover's uncontested affidavit ¶ 6 that states that Foxworth took no unusual collection efforts against Debtor.

Under Sunset Sales, the Court must examine the following: "(1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender

-13-

differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made." 220 B.R. at 1020-21.  Foxworth has shown that the parties were engaged in similar transactions with similar terms for seventeen years. Debtor always paid late but averaged about 115 days.  It always paid by check and always lumped invoices together.  Foxworth did not engage in any unusual collection activity.  There is no evidence Foxworth put Debtor on credit hold or threatened or filed suit.  The payments were made in ordinary circumstances. The Plaintiff has not met its burden to overcome Foxworth's showing.

### **CONCLUSION OF LAW**

Foxworth has met its burden of proof to establish a defense to the Plaintiff's preference recovery power under Section 547(c)(2)(A).  A judgment for Foxworth will enter.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  April 6, 2011

Copies to:

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Kieran F Ryan
Ryan Law Office
PO Box 26
Las Cruces, NM 88004-0026

David McNeill, Jr
Holt Babington Mynatt P.C.
PO Box 2699
Las Cruces, NM 88004-2699

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608